UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL ALLEN HUFF,

Plaintiff,

v.                                              CAUSE NO.: 3:18-CV-122-JD-MGG

STEPHEN TABLER, et al.,

Defendants.

OPINION AND ORDER

Michael Allen Huff, a prisoner without a lawyer, proceeds on claims against

Stephen Tabler, Steven Sewell, and Seth Barton, alleging that they punished him in

violation of the Fourteenth Amendment on June 14, 2017, by using excessive force and

by transferring him from Pulaski County Jail to Starke County Jail, which resulted in

the loss of contact and support from family and friends. ECF 6. The defendants filed a

motion for summary judgment, arguing that the use of force and transfer was an

objectively reasonable response to Huff's refusal to comply with orders. Huff responds

that he was entitled to disregard unlawful orders and that he never posed a physical

threat to the defendants.

FACTS

At all relevant times, Huff was a pretrial detainee at the Pulaski County Jail, and

the defendants served as correctional officers. In support of the instant motion, the

defendants have submitted video recordings of the use of force incident,[1] the incident reports, and Huff's deposition. According to these exhibits, the following occurred.

On June 14, 2017, around noon, Huff threw a trash can at the wall in a common room several times. ECF 41 at 12:12. Jail staff ordered him to return to his cell, but he refused and continued throwing the trash can. *Id.* at 12:12-16. Officer Tabler and Officer Sewell arrived and ordered Huff to allow them to handcuff him, but he refused and resisted their efforts to place him in handcuffs. *Id.* at 12:16. The officers forced Huff to the ground, tased him, and placed handcuffs on his wrists as he continued to resist. *Id.* at 12:17-18. After handcuffing his wrists. Officer Tabler and Officer Sewell began escorting him from the common room to a padded cell. *Id.* at 12:19. On the way, Huff continued to resist, kicked a mop bucket filled with water, and attempted to redirect the escorting officers. *Id.* After a brief struggle, the officers held Huff face down on the floor and waited for Officer Barton to arrive with additional handcuffs for Huff's ankles. *Id.* at 12:19-21. After shackling Huff's ankles, the officers escorted and placed him in a padded cell. *Id.* at 12:21.

Upon arrival, Huff allowed the officers to remove the handcuffs on his wrists, but, when the officers ordered him to kneel so that they could remove the handcuffs from his ankles, he ignored them.[2] *Id.* at 12:23-24. Officer Barton forced Huff to the

---

[1] Huff states that the defendants did not send him these video recordings, but the defendants certified that they sent him disks with the recordings twice: once to his address at the Reception Diagnostic Center and once to his address at the Miami Correctional Facility. ECF 41, ECF 43.

[2] Though Huff denies that the officers ordered him to kneel, these orders can be heard clearly on the video recording. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a

ground and held him there while the handcuffs were removed. *Id.* On the video

recording, as Officer Barton held Huff to the ground, the sound of Huff's head hitting

the floor is audible, but another officer momentarily obstructs the view of Officer Barton

and Huff's upper body. *Id.* at 12:24. In the incident report, Officer Barton explained that,

at that moment, he felt Huff tense up as if he intended to start actively resisting again.

ECF 34 at 166-68. Officer Barton further explained that he struck Huff's head to distract

Huff as he struggled to maintain control of Huff's arms and needed to reposition. *Id.* At

his deposition, Huff testified that he tensed up due to pain and that he did not sense

that Officer Barton was losing control. ECF 34 at 110-11.

After he was left alone in the padded cell, Huff began kicking the cell door. ECF

41 at 12:26. In response, Officer Barton returned and forced Huff to the floor. *Id.* Huff

was then handcuffed and strapped to a chair. *Id.* at 12:26-29. Huff made a reference to

Officer Tabler's son's life, which Officer Tabler understood as a threat to his family. ECF

34 at 173-74. About an hour later, Huff was placed in a van and transferred to the Starke

County Jail. ECF 41 at 13:40. As a result of the use of force, Huff suffered lacerations,

bruises, and soreness on the head, neck, ribs, back, and extremities but never requested

medical attention for them. ECF 34 at 95-96.

<u>STANDARD OF REVIEW</u>

Summary judgment must be granted when "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

DISCUSSION

Huff alleges that Stephen Tabler, Steven Sewell, and Seth Barton punished him in violation of the Fourteenth Amendment on June 14, 2017, by using excessive force and by transferring him from Pulaski County Jail to Starke County Jail. "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that amount to punishment." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 856 (7th Cir. 2017). "[P]unishment can consist of actions taken with an expressed intent to punish," or, "in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not rationally related to a legitimate nonpunitive governmental purpose or that the actions appear excessive in relation to that purpose." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). A pretrial detainee can "prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.*

"A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20

4

vision of hindsight." *Id.* "A court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

Huff argues that he was entitled to disobey the order to return to his cell because it was an unlawful order. He states that he was constitutionally entitled to an hour out of his cell. He further argues that the defendants' use of force from the time they approached him in the dayroom was excessive because he made no attempt to fight them and did not pose a threat. Based on these arguments, it appears that Huff misunderstands the balance between his rights as a detainee and the governmental interest in maintaining order, discipline, and safety in a detention facility.

> When an order is given to an inmate there are only so many choices available to the correctional officer. If it is an order that requires action by the institution, and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force. While experts who testified on behalf of the plaintiffs, suggested that rather than seek to enforce orders, it was possible to leave the inmate alone if he chooses not to obey a particular order, and wait him out, experience and common sense establish that a prison cannot be operated in such a way.

> Discipline in a maximum security correctional institution no doubt is
> difficult, but it is essential if the prison is to function and provide for the
> care, safety and security of the staff and inmates. Services to provide food,
> clothing, health, medical, cleaning, laundry and all other services would
> come to end without discipline. Mob rule would take over. There would
> not, and could not, be any protection for staff or inmates. Orders given
> must be obeyed. Inmates cannot be permitted to decide which orders they
> will obey, and when they will obey them. Someone must exercise
> authority and control. One can quickly reason what would happen in a
> maximum security prison without proper discipline.

*Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984). While the Pulaski County Jail is not a

maximum security prison, the same basic principles apply. Detainees cannot be allowed

to disobey orders based on their personal understanding of constitutional law, and,

when detainees refuse to disobey orders, jail officials have limited options at their

disposal to maintain discipline and security. As such, when Huff refused to return to

his cell, the defendants were entitled to use a reasonable amount of force to move Huff

regardless of whether Huff attempted to physically harm them.

After reviewing the record, the court finds that no reasonable juror could

conclude that the defendants used an unreasonable amount of force against Huff. The

parties largely agree on the sequence of events, and it is clear from the record that Huff

did not simply disobey orders but actively resisted the defendants' efforts in escorting

him around the jail, placing and removing handcuffs, and securing him in a padded

cell. The defendants also stopped using force immediately after completing each of their

objectives. Though Huff suggests that, at times, the defendants used more force than

necessary, moving detainees around the jail and securing them as they physically resist

is not an exact science, and the record indicates that the defendants' use of force was

reasonably tailored to that end. Further, while Huff suffered some injuries, none of them required medical attention.

The only portion of the video surveillance recording that raises any concern is the few seconds when another officer obstructed the view of the camera as Officer Barton delivered the distraction strike to Huff. However, despite the obstructed view, the record shows that the strike did not cause significant injury to Huff or even cause him to vocalize his pain. Though Officer Barton and Huff do not agree on why Huff began to tense up or on the degree of control Officer Barton had over Huff at this particular time, the court must bear in mind that the relevant perspective is that "of a reasonable officer on the scene, including what the officer knew at the time." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015); *Burton v. City of Zion*, 901 F.3d 772, 780 (7th Cir. 2018). At this time, Officer Barton knew that Huff had actively resisted correctional staff since they approached him in the dayroom. Consequently, Officer Barton's belief that Huff intended to start actively resisting again and that he did not have adequate control over Huff was reasonable. Based on this reasonable belief, the decision to deliver a minimally harmful distraction strike was also reasonable and consistent with the goal of maintaining discipline and security.

The court has also examined other cases considering whether applications of force were reasonable as a matter of law:

- In *Stubblefield v. Jones*, 2015 WL 2128602 (N.D. Ill. 2015), jail officers escorted a detainee to his cell with handcuffs, leg shackles, and a three-foot chain connecting them. When they arrived at the cell, they removed the leg shackles and fed the chain through the chuckhole in accordance with the facility's procedure for removing

handcuffs. The detainee did not cooperate with the efforts to remove his handcuffs, and the officers yanked the chain for the purpose of maneuvering the detainee's hands through the chuckhole. While the detainee suffered cuts and scrapes, he did not suffer broken bones or need stitches. The court granted summary judgment against the detainee, reasoning that jail officers are entitled to use reasonable force to compel compliance with orders and that no reasonable jury could find that this use of force was unreasonable or intended to punish.

- In *King v. Evans*, 230 F. Supp. 3d 874 (N.D. Ill. 2016), a police officer represented that, when an arrestee started spitting in his face, he grabbed her head firmly and applied pressure to her nose for two or three seconds, which resulted in no significant injuries. The court denied an arrestee's motion for summary judgment against police officers, reasoning the police officers disputed the arrestee's characterization of herself as a passive resister and that police officers were entitled to use reasonable force even against those who were only passively resisting arrest.

- In *Karkoszka v. Dart*, 2016 WL 164331 (N.D. Ill. 2016), a detainee actively resisted the jail officers attempt to place him in handcuffs, and they used pepper spray on him to compel compliance. However, the court denied the motion for summary judgment because the parties disputed whether the jail officers continued to assault the detainee after he was placed in handcuffs and secured in his cell.

- In *Williams v. Stauche*, 709 F. App'x 830 (7th Cir. 2017), a detainee attested that, when he arrived at the jail in a wheelchair, jail officers rammed him into several objects, slammed him into the wall to remove him from his wheelchair without asking him to stand, and dropped him on his cell floor after a pat down search. The Seventh Circuit reversed the district court's grant of summary judgment to the jail officers, reasoning that a dispute of material fact existed because the jail officers denied the detainee's attestations and offered no reasonable justification for the alleged force.

- In *Lancour v. Parshall*, 2017 WL 2198195 (W.D. Wis. 2017), after a police officer spoke to an arrestee through the open door of another officer's vehicle, the officer entered the vehicle and placed the arrestee's head in a pressure hold because he believed that the arrestee intended to spit on him based on the arrestee's agitated

state. The court denied the officer's motion for summary judgment, noting the absence of any particular basis to believe that the arrestee intended to spit and the availability of reasonable alternatives, including closing the vehicle door or not entering the vehicle.

The facts of this case more closely resemble those in *Stubblefield* and *King* because, here, the defendants had a legitimate basis to use some force against Huff when he actively resisted their efforts to escort and secure him in his cell. By contrast, the facts of this case are unlike the facts of *Karkoszka* because no evidence suggests that the defendants continued applying force after securing Huff in the cell. Further, unlike *Williams*, the record does not suggest that the use of force against Huff was entirely gratuitous, and, unlike *Lancour*, the defendants had a reasonable basis to believe that force was necessary to compel compliance with no reasonable alternative option for achieving that end without the use of force. Consequently, the court's finding that no reasonable juror could conclude that the defendants used an unreasonable amount of force against Huff is consistent with the decisions of other federal courts.

The defendants' interest in maintaining discipline and security also justifies the transfer to Starke County Jail, particularly in light of Huff's personal animosity to jail staff as demonstrated by his references to Officer Tabler's family as well as his spiteful demeanor toward the defendants throughout the incident. Therefore, the court grants summary judgment on Huff's Fourteenth Amendment claim against the defendants, and there are no remaining claims in this case.

Finally, the defendants argue that, even if they committed a constitutional violation, they would be entitled to qualified immunity. "The doctrine of qualified

immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). There is a two-part inquiry for determining whether the defense applies: (1) whether the facts alleged by the plaintiff show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Id.* This does not require inquiry into the defendant's subjective intent. *Harlow v. Fitzgerald*, 457 U.S. 800, 816-18 (1982). Instead, the question is one of "the objective reasonableness of an official's conduct, as measured by reference to clearly established law." *Id.* at 818. In *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015), the Supreme Court of the United States articulated the objective reasonableness standard and the relevant factors for claims of excessive force asserted by pretrial detainees, and *Kingsley* continues to serve as the seminal case for such claims. As detailed above, the court finds that the defendants' conduct was consistent with *Kingsley*. Therefore, even if the defendants violated Huff's rights under the Fourteenth Amendment, they would be entitled to summary judgment against Huff based on qualified immunity.

For these reasons, the court:

(1) GRANTS the motion for summary judgment (ECF 36); and

(2) DIRECTS the clerk to enter judgment and to close this case.

SO ORDERED on July 31, 2019

_____/s/ JON E. DEGUILIO_____
JUDGE
UNITED STATES DISTRICT COURT